AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
FEB 12 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

One (1) Google Phone
Model Number: Pixel 2 XL
IMEI: 358035085116279

Case No.

19MJ0577

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Attachment A, incorporated herein by reference

located in the     Southern    District of     California    , there is now concealed *(identify the person or describe the property to be seized)*:

Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960, 963 | Importation of a Controlled Substance; Conspiracy to Commit Same |

The application is based on these facts:

See attached Affidavit of Special Agent Edward Wyner, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Edward Wyner, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/11/19

*Judge's signature*

City and state: San Diego, CA

William V. Gallo, Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Edward Wyner, Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), having been duly sworn, hereby state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a warrant to search the following electronic device:

> One (1) Google Phone
> Model No. Pixel 2 XL
> IMEI # 358035085116279
> (**Target Device**), as described in Attachment A

2. On October 7, 2018, the **Target Device** was seized from Edgar GONZALEZ ("Defendant") after Customs and Border Protection Officers at the Otay Mesa Port of Entry, found approximately 71.17 kilograms of methamphetamine inside Defendant's vehicle. Defendant has been charged with importing methamphetamine, in violation of 21 U.S.C. §§ 952 and 960, and pled guilty on January 3, 2019. *See* Criminal Case No. 18CR4718-AJB. As set forth below, based on my training and experience, there is probable cause to believe that the **Target Device** contains evidence relating to violations of Title 21, United States Code, Sections 952, 960, and 963.

3. The **Target Device** is currently in the possession of the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, Assistant Special Agent in Charge ("ASAC") Otay Mesa, 2255 Niels Bohr Court, Otay Mesa, California, 92154 (Seized Property Vault). Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## EXPERIENCE AND TRAINING

4. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), authorized to present an affidavit in support of a warrant. I am a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI").

5. I have been employed as a Special Agent with HSI since 2018. I have received criminal investigative training, including 26 weeks at the Federal Law Enforcement Training Center. As a result of my training and experience as a Special Agent, I am familiar with federal criminal statutes to include violations of Title 21 of the United States Code.

6. As a Special Agent with HSI, my primary duties include the investigation of narcotics-related violations of Title 21 of the United States Code. I have participated in and conducted investigations of violations of various Federal criminal laws, including distribution of controlled substances, use of a communication facilities to commit narcotic offenses, importation of controlled substances, conspiracy to import, possess and distribute controlled substances, and money laundering, all in violation of Title 21 and Title 18, United States Code and various California Health and Safety Code and California Penal Code sections. These investigations resulted in arrests of individuals who have imported, smuggled, received and distributed controlled substances. Also, these investigations resulted in seizures of property, assets, and controlled substances. Through these investigations and training, I am familiar with the operations of illegal international Drug Trafficking Organizations (DTO) in the United States and abroad.

7. Based on my experience and training, I am familiar with the methods utilized in narcotics-trafficking operations and the trafficking patterns employed by narcotics organizations. I have also spoken with agents, as well as other law enforcement officers, about their experiences and the results of their investigations and interviews. I have become knowledgeable of the methods and modes of narcotics operations and the language and patterns of narcotics abuse and trafficking. I have become familiar with the methods of

2

operation typically used by narcotics traffickers. For example, I have learned that narcotics traffickers often require the use of one or more telephone facilities to negotiate times, places, schemes and manners for importing, possessing, concealing, manufacturing and distributing controlled substances and for arranging the disposition of proceeds from the sale of controlled substances. I have also learned that professional narcotics operations depend upon maintaining their extensive contacts. The use of telephones is essential in maintaining timely long-distance and local contacts with the original suppliers and those down the organizational chain to the local traffickers. The telephone enables narcotics dealers to maintain contact with narcotics associates, narcotics suppliers, and narcotics customers.

8. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

9. Based upon my training and experience as a Special Agent, and consultation with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Drug smugglers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c. Drug smugglers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    d. Drug smugglers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

3

  e. Drug smugglers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

  f. Drug smugglers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

  g. The use of cellular telephones by drug traffickers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

9. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

10. Based upon my training and experience as a Special Agent, and consultation with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I have learned that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I have learned, through my training, education, that searches of cellular/mobile telephones associated with narcotics smuggling yield evidence:

  a. tending to indicate efforts to import methamphetamine or other federally controlled substances from Mexico into the United States;

4

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or other federally controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine or other federally controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation methamphetamine or other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject cellular/mobile telephone; and

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## PROBABLE CAUSE

11. On October 7, 2018, at approximately 11:36 a.m., Defendant entered the United States from Mexico through the Otay Mesa Port of Entry. Defendant was alone, driving a jeep. During inspection, Customs and Border Protection Officers discovered within the gas tank approximately 71.17 kilograms of a combination of gasoline and a substance that field tested positive for methamphetamine. Defendant was arrested for violations of Title 21, United States Code, Sections 952 and 960. The **Target Device** was seized incident to Defendant's arrest.

12. Defendant was read his *Miranda* rights and he elected to waive those rights and provide a statement. In part, Defendant admitted that he knowingly attempted to smuggle narcotics in his vehicle, and that he expected to be paid for doing so. Defendant further admitted that he had previously successfully smuggled narcotics into the United States from Mexico on five occasions. On January 3, 2019, Defendant pled guilty to the offense of importing methamphetamine, admitting that he knowingly imported a federally

controlled substance into the United States. He is scheduled for sentencing on April 3, 2019.

13. Crossing records show the smuggling vehicle first crossed into the United States from Mexico on April 3, 2018. After April 3, 2018, the smuggling vehicle then entered the United States approximately fourteen additional times before the date of Defendant's arrest. All but one of the dates and times of the crossings matched the dates and times of Defendant's crossings into the United States.

14. Based upon my experience and investigation in this case, I believe that Defendant, as well as other persons as yet unknown, were involved in an ongoing conspiracy to import methamphetamine or other federally controlled substances into the United States. Based on my experience investigating narcotics smugglers, I also believe that Defendant may have used the **Target Device** to coordinate with co-conspirators regarding the importation and distribution of controlled substances, and to otherwise further this conspiracy both inside and outside of the United States.

15. Further, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Device** which may identify other persons involved in narcotics trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics trafficking activities of Defendant, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures, audio files, videos and other digital information are stored in the memory of the **Target Device**.

16. Finally, I am aware that drug conspiracies require detailed and intricate planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. Given this, I respectfully request permission to search the **Target Device** for data beginning on March 27, 2018, up to and including October 14, 2018.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

17. Following Defendant's arrest on October 7, 2018, Defendant provided consent to search the **Target Device** at the border. Thereafter, some of the contents of the **Target Device** were downloaded. I have reason to believe, however, that we were not successful in downloading the entire contents of the **Target Device**.

18. Nothing from the border search of the **Target Device** is used to support probable cause for the issuance of the warrant.

### GENUINE RISKS OF DESTRUCTION

19. Since the **Target Device** is in law enforcement custody, there is no genuine risk of destruction.

### METHODOLOGY

20. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in

7

a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21. Following the issuance of this warrant, I will collect the **Target Device** and subject them to analysis. All forensic analysis of the data contained within the telephones and memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

8

## CONCLUSION

23. Based on all of the facts and circumstances described above, there is probable cause to conclude that Defendant used the **Target Device** to facilitate violations of 21 U.S.C. §§ 952, 960, and 963. I also believe that probable cause exists to believe that evidence of that illegal activity committed by Defendant and other co-conspirators continues to exist on the **Target Device**.

24. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the item described in Attachments A, and seize the items listed in Attachments B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Edward Wyner
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this ___11___ day of February, 2019.

_____
Hon. William V. Gallo
United States Magistrate Judge

## ATTACHMENT A

The following property ("**Target Device**") is to be searched:

One (1) Google Phone
Model Number: Pixel 2 XL
IMEI ID: 358035085116279

**Target Device** is currently in the possession of the Seized Property Specialist, Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, 2255 Niels Bohr Court, Otay Mesa, California, 92154.

## ATTACHMENT B

### ITEM TO BE SEIZED

Authorization to search **Target Device** described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of **Target Device** shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from **Target Device** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of March 27, 2018- October 14, 2018:

a. tending to indicate efforts to import methamphetamine, cocaine, or other federally controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, cocaine, or other federally controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine, cocaine, or other federally controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, cocaine, or other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, **Target Device**; and

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.**